UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE HOWARD KEEL, II, | ) | 1:06-cv-01073-AWI-JMD-HC |
| Petitioner, | ) | |
| v. | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| JAMES E. TILTON, | ) | |
| Respondent. | ) | |
| | ) | OBJECTIONS DUE WITHIN THIRTY DAYS |

Petitioner Joe Howard Keel ("Petitioner") is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

On May 27, 2003, a jury convicted Petitioner of one count of attempted murder, one count of felon in possession of a firearm, one count of felon in possession of ammunition, and one count of commission of a hate crime in the Superior Court of California, Tulare County. (Pet. at 13).

The California Court of Appeal affirmed Petitioner's conviction and sentence on February 14, 2005.[1] (Pet., Ex. A). Petitioner then filed a petition for review with the California Supreme Court, which was denied on May 18, 2005. (Lodged Doc. No. 7).

///

///

---

[1] The Court of Appeal vacated one of the sentencing enhancements imposed and remanded the case to the Superior Court for re-sentencing.

Petitioner filed a petition for writ of habeas corpus in the Superior Court of California, Tulare County, on February 15, 2006. (Pet., Ex. 5). The Superior Court denied Petitioner's state habeas petition on February 21, 2006, in a reasoned decision. (Pet., Ex. D).

On May 16, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal. (Lodged. Doc. 10). As of the time Petitioner filed his federal habeas petition, the California Court of Appeal had not yet issued a decision on Petitioner's state habeas petition.

Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on January 26, 2007. (Lodged Doc. 13). The California Supreme Court summarily denied Petitioner's state habeas petition on March 28, 2007. (Id.).

Petitioner filed the instant petition for writ of habeas corpus in the United States District Court, Eastern District of California, on August 7, 2006. On June 27, 2007, Respondent filed an answer to the petition. Petition filed a traverse on September 21, 2007.

**Factual Background[2]**

In 2002 Dr. Ashtok Behl was a cardiologist who lived and practiced in Porterville. He was born in India but became an American citizen approximately 20 years ago.

The night of February 17, 2002, Keel was at the home of Johnny Castillo, a friend. Keel was making racist remarks and waving a handgun. Keel also made nonsensical remarks about the Mafia and John Gotti.

On the morning of February 18, 2002, the doorbell rang at Behl's home and he went to answer the door. Behl looked out through a glass panel in the door and saw a man on the doorstep, Keel, pull out a gun. Keel aimed the gun at Behl's head and fired. Behl's son heard the shot and dialed 911 for assistance.

As a result of the shooting, Behl had glass in his eyes and imbedded in his face. Because Behl shifted position when he saw the gun, the bullet entered his shoulder instead of his head.

Investigating officers found a .40-caliber bullet casing outside Behl's house. A Nokia cellular phone was found in the driveway. Officers determined that Keel was the service subscriber for the cellular telephone number on the phone.

At noon on February 18, 2002, Burbank police officers arrived at the scene of an accident involving Keel. Keel was placed under arrest. Officers found a .40-caliber magazine in Keel's car and a gun in his pants pocket. Keel was released but arrested again shortly thereafter when Burbank officers learned he was wanted in connection with a shooting in Porterville.

---

[2] The Court adopts the factual history set forth in the California Court of Appeal's unpublished decision affirming Petitioner's conviction.

After his second arrest, Keel told Burbank officers "detectives are looking for me right now for a crime I fucking committed in my town with that gun."

Clifton Koontz was one of Keel's friends. Koontz's stepfather, Jeff Weber, owned a .40-caliber Smith & Wesson handgun. When detectives asked to see the weapon, Weber discovered it was missing from its case. Keel later admitted to detectives that he received the gun from Koontz in exchange for cocaine.

Porterville detectives interviewed Keel on February 19, 2002. They believed Keel was under the influence during the interview. Keel's statements at that time were "nonsensical" and "rambling." While being transported from Burbank to Porterville, Keel stated he intentionally fired shots at the home of another doctor, Dr. Sagar Reddy, who also originally was from India. Keel told Reddy to "Get the fuck out of state."

Keel told detectives that before he fired at Behl, he turned his car around in the doctor's driveway so that it faced the street for a quick getaway. He described getting out of the car, walking to the door, and firing through the glass panel. Before firing at Behl, Keel told detectives he asked, "What the fuck you doing here?" Keel also told detectives that when he fired shots at Reddy's home, he walked to the gate's intercom, said "Get the fuck out of state," and fired the weapon.

During the course of his various interviews with law enforcement, Keel did make numerous statements that were nonsensical.

When arraigned, Keel initially pled not guilty by reason of insanity. After three doctors examined Keel pursuant to section 1026, he withdrew his plea and entered a plea of not guilty.

At trial the defense presented several witnesses that testified to irrational or nonsensical behavior by Keel, including stabbing his father in the neck and consulting an attorney to assist him in resolving problems he claimed to be having with John Gotti. In 1993 one doctor noted that Keel apparently had a personality disorder.

Keel's grandmother testified Keel abused drugs and that his behavior was worse when he used drugs. Keel's father testified Keel was high strung and stormed out of the house on the weekend of the shooting. Keel's father thought Keel was under the influence of something at the time.

Dr. Howard Terrell, a forensic psychiatrist, testified for the defense. Terrell testified that chronic drug abuse could trigger mental illness or aggravate an existing mental illness. Mental illness and the tendency to become a substance abuser often run in families.

Terrell reviewed materials prepared by the Tulare County Mental Health Services Department. Those documents showed that Keel first denied drug and alcohol use but then reported heavy use of methamphetamine since the seventh grade. Keel's grandfather and brother committed suicide, and his mother was under treatment for bipolar disorder or schizo-affective disorder with bipolar features. When Keel was in custody after stabbing his father, he tried to commit suicide.

Terrell testified that after several weeks in custody, without access to illegal substances, Keel still exhibited psychotic symptoms.

Terrell stated that either Keel was developing a serious mental disorder or he might be one of the rare people who stayed psychotic for long periods of time after using methamphetamine.

Terrell stated that Keel's behavior was goal oriented and Keel "very likely knew he was doing something … wrong."

Terrell also felt, however, that Keel's judgment was impaired and that he was not thinking in a rational manner.

Terrell diagnosed Keel as having a psychotic disorder, currently in remission, which also was precipitated by methamphetamine or cocaine. Terrell believed Keel's psychotic behavior was caused more by drugs than by any mental illness. When Terrell interviewed Keel, Keel's judgment, insight, and reality contact were good.

Keel testified that he had nothing against Arabs or Middle Eastern people. He claimed that when he raised the gun, he gave Behl enough time to duck before firing. Much of Keel's testimony, however, did not make sense.

Dr. Stephen Bindler, a clinical and forensic psychologist, testified on rebuttal. In Bindler's opinion, a person in Keel's condition at the time of the shooting is capable of exercising judgment, albeit flawed judgment. The person likely would make bad choices because his judgment would be impaired.

The jury convicted Keel of willful, deliberate, and premeditated attempted murder, possession of a firearm by a felon, and possession of ammunition. The jury also found that Keel personally used a firearm, discharged a firearm causing great bodily injury, inflicted great bodily injury, and the crime was committed because of the victim's race, nationality or country of origin.

(Pet., Ex. A at 57-60).[3]

## Discussion

**I.     Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a);[4] 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375, n.7 (2000).

---

[3] Exhibit A consists of both Petitioner's appeal and the Court of Appeal's denial of Petitioner's appeal; accordingly, the page numbers cited herein correspond to Exhibit A viewed as a single document, the first page of which begins on page 21 of the document listed on the Court's electronic docket as Document 1- Petition for Writ of Habeas Corpus.

[4] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320, (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997), <u>cert. denied</u>, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir.1996), <u>cert. denied</u>, 520 U.S. 1107, 117 S.Ct. 1114 (1997), <u>overruled on other grounds by</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

Venue for a habeas corpus petition is proper in the judicial district where the prisoner is held in custody. See 28 U.S.C. § 2241(d).

Petitioner is currently incarcerated at High Desert State Prison in Lassen County, California. As Petitioner asserts that he is being held in violation of his right to due process under the United States Constitution, and because Lassen County is within the Eastern District of California, the Court has jurisdiction to entertain Petitioner's petition and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

**II. Standard of Review**

Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition for habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas petition "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (citations omitted).

**III. Petitioner's Claims**

**A. The Trial Court's Jury Instructions**

Petitioner contends that the trial court erroneously failed to instruct the jury on the lesser offense of attempted voluntary manslaughter. (Pet., Ex. A at 61). In a non-capital case, the "[f]ailure of a state court to instruct on a lesser offense fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984) (quoting James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (per

curiam));[5] Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000); Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir. 1998); Turner v. Marshall, 63 F.3d 807, 819 (9th Cir.1995), overruled on other grounds by Tolbert v Page, 182 F.3d 677 (9th Cir.1999) (en banc) (finding the application of Beck to noncapital cases barred by Teague v. Lane, 498 U.S. 288, 299-300 (1989)); James v. Reese, 546 F.2d 325, 327 (9th Cir. 1976) (per curiam). "The Bashor court noted, however, that the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." Solis, 219 F.3d at 929 (citing Bashor, 730 F.2d at 1240).

Even assuming that the Court's supposition in Bashor is clearly established federal law for the purposes of AEDPA analysis, Petitioner is not entitled to relief on his jury instruction claim because the instructions given to the jury were adequate given the defense advanced by the Petitioner. As the California Court of Appeal noted in its' rejection of Petitioner's jury instruction claim:

> A trial court errs if it fails to instruct sua sponte on a "lesser included offense which finds substantial support in the evidence." (People v. Breverman (1998) 19 Cal.4th 142, 162.) The existence of any evidence, no matter how weak, will not justify instructions on a lesser included offense; the evidence must be substantial enough to merit consideration by the jury. (Ibid.)
>
> Specifically, Keel contends the trial court should have instructed the jury sua sponte with a modified version of CALJIC No. 8.40. Keel asserts that "when voluntary intoxication and mental disease disprove the presence of malice aforethought" the attempted killing is attempted voluntary manslaughter. Keel appears to contend that where there is a specific intent to kill, but the defendant suffers from a mental disorder or voluntary intoxication, malice is negated.
>
> Section 22 provides that evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental state. It can, however, be admitted on the issue of whether a defendant formed a required specific intent or harbored malice aforethought. Section 28 provides that evidence of a mental disorder shall not be admitted to negate the capacity to form any mental state, including malice aforethought, but may be admitted to establish whether the defendant actually harbored malice aforethought or formed a required specific intent.

///

///

---

[5] While the United States Supreme Court held in Beck v. Alabama, 447 U.S. 625, 638 (1980), that criminal defendants possess a constitutional right to have the jury instructed on a lesser included offense in a capital murder case, the Beck court also expressly reserved the question of whether due process mandates the application of the same right to non-capital cases. See Beck, 447 U.S. at 638, n.14; Solis, 219 F.3d 922, 928 (9th Cir. 2000).

> Thus, while a jury may consider the effects of voluntary intoxication or mental disorder on a case-by-case basis to determine if a defendant actually harbored malice aforethought and formed the requisite specific intent, those conditions may not be used to establish that a defendant lacked the capacity to form the requisite mental state.
>
> Keel's reliance on People v. Lasko (2000) 23 Cal.4th 101 and People v. Blakeley (2000) 23 Cal.4th 82 is misplaced. In Lasko the court concluded that where a person acting with a conscious disregard for life unintentionally kills during a sudden quarrel or in the heat of passion, the crime committed is voluntary manslaughter. (Lasko, at pp. 109-110.) In Blakeley the court held that when a person acting with conscious disregard for life and the knowledge that the conduct is life-endangering unintentionally kills while harboring an unreasonable but good faith belief in the need for self-defense, it is voluntary manslaughter. (Blakeley, at p. 85.)
>
> Keel never asserted that his acts were the result of a sudden quarrel, heat of passion, or unreasonable belief in the need for self-defense. Neither Lasko nor Blakeley addressed the effect of voluntary intoxication or mental defect on one's ability to harbor malice aforethought. It is axiomatic that cases do not stand for propositions not considered therein. (People v. Alvarez (2002) 27 Cal.4th 1161, 1176.)
>
> In Keel's case the jury received correct instructions regarding the manner in which evidence of voluntary intoxication and a mental defect were to be considered. The jury was instructed that in the crime of attempted murder "a necessary element is the existence in the mind of the defendant of the specific intent to kill and the mental state of malice aforethought." The jury was instructed to consider evidence of Keel's intoxication "separately or in combination with any evidence of defendant's mental disorder in determining whether defendant had such specific intent and or said mental states." The jury also was instructed to consider evidence of Keel's mental disorder for the purpose of determining whether he "actually formed the required specific intent, premeditated, deliberated, and had malice aforethought."

(Pet., Ex. A at 63-64).

The Court of Appeal determined that "the evidence and the current state of the law did not warrant an attempted involuntary manslaughter instruction." (Id.) The Court is bound by the state's interpretation of its own laws, Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), and the state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1).

The Court finds that Petitioner's jury instruction claim does not allege a violation of clearly established federal law as determined by the holdings of the Supreme Court of the United States. To the extent Petitioner's claim is cognizable in a federal habeas petition, Petitioner is not entitled to relief on his claim. The trial court expressly instructed the jury to consider Petitioner's mental disorder and intoxication in determining whether Petitioner acted with the requisite specific intent. Further, as the Court of Appeal noted, the legal authorities cited by Petitioner do not support his

contention. Accordingly, the California Court of Appeal's determination that Petitioner falied to meet his burden with respect to obtaining an instruction on attempted voluntary manslaughter is not objectively unreasonable; therefore, Petitioner is not entitled to relief. Lockyer, 538 U.S. at 75 (citations omitted).

**B. Sufficiency of the Evidence Claims**

Petitioner contends that there was insufficient evidence presented at trial to support 1) the jury's finding that his actions were willful, deliberate, and premeditated, and 2) that his crime satisfied the elements of a hate crime under California Penal Code section 422.75. (Pet. at 16).

Petitioner's conviction must stand if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Davis v. Woodford, 333 F.3d 982, 992 (9th Cir. 2003) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). A federal habeas court "faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. The Court must apply the sufficiency of the evidence standard "with explicit reference to the substantive elements of the criminal offense as defined by state law." Id.

**1. Attempted Murder Conviction**

Petitioner contends that there was insufficient evidence presented at trial to support the jury's finding that his actions were willful, deliberate, and premeditated. Pursuant to California law, premeditation and deliberation may be established by evidence establishing planning activity, motive, and the manner of the attempted killing. See People v. Villegas, 92 Cal.App.4th 1217, 1223-24 (Cal. Ct. App. 2001). "The process of premeditation and deliberation does not require any extended period of time. 'The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.'" Id. (citations omitted). The act of firing toward a victim at a close range in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. Id. (quoting People v. Chinchilla, 52 Cal.App.4th 683, 690 (1997)).

///

The Court of Appeal issued a reasoned decision denying Petitioner's sufficiency of the evidence claim and concluded that there was evidence on the record sufficient to permit a rational jury to find that Petitioner acted with the requisite mental state to support an attempted murder conviction under state law. (Pet., Ex. A at 65-66.) After reviewing the record, the Court cannot say that the Court of Appeal's determination that the evidence was sufficient to support Petitioner's conviction was objectively unreasonable; therefore, Petitioner is not entitled to relief. Lockyer, 538 U.S. at 75 (citations omitted). The testimony at trial established that Petitioner went to the victim's home, with a weapon, pointed the weapon at the victim's face, and fired at point blank range. (Lodged Doc. 14 at 51). Petitioner also positioned his car for a quick escape before firing at the victim. (Lodged Doc. 14 at 160). These facts, and other facts contained in the record, establish that a reasonable jury could have found that Petitioner's crime was willful, deliberate, and premeditated. See id., 92 Cal.App.4th at 1223-24. Accordingly, Petitioner's claim that the evidence was insufficient to support his conviction for attempted murder is without merit.

**2. Hate Crime Enhancement**

Petitioner contends that the evidence produced at trial was insufficient to support his conviction for commission of a hate crime enhancement pursuant to California Penal Code section 422.75. Specifically, Petitioner challenges the Jury's finding that Petitioner was motivated by racial bias and that Petitioner acted in concert with another individual. The California Supreme Court has interpreted section 422.75 to require that "the bias motivation must have been a cause in fact of the offense, and when multiple concurrent causes exist, the bias motivation must have been a substantial factor in bringing about the offense." People v. Superior Court (Aishman), 10 Cal. 735, 741 (Cal. 1995). After reviewing the record, the Court is satisfied that the evidence produced at Petitioner's trial was sufficient to convince a rational jury that the bias motivation was a substantial factor in bringing out the offense.

Testimony at Petitioner's trial established that Petitioner shot the victim because the Petitioner believed the victim was not an American. (Lodged Doc. 14 at 158.). Petitioner stated that he believed the victim, who is of Indian descent, was involved with Osama Bin Laden. (Id.). Testimony also established that Petitioner had fired shots at the home of another individual who was

of Indian descent in the days prior to the shooting of the victim without any provocation. (Id. at 164). Based on this testimony, a reasonable jury could find that racial bias was the cause in fact of the offense or was a substantial factor in bringing about the offense. Thus, the Court of Appeal's holding that the evidence was sufficient to support the jury's finding of racial bias motivation was not objectively unreasonable.

The record also contains evidence sufficient to establish that Petitioner acted in concert with another individual in the commission of the offense. Testimony at trial revealed that Petitioner drove to the victim's house with another individual, Edward Gibson. (Lodged Doc. 15 at 158). According to the testimony at trial, Petitioner instructed Gibson to turn the car around in the victim's driveway so that they would be able to make a quick escape, and Gibson attempted to comply with the instruction. (Id.) This evidence was sufficient to permit a rational jury to conclude that Petitioner and Gibson acted in concert in the commission of the offense. Accordingly, the Court cannot say that the Court of Appeal's finding that the evidence supported Petitioner's conviction under section 422.75 was objectively unreasonable, and thus Petitioner is note entitled to relief. Lockyer , 538 U.S. at 75.

**C. Prosecutorial Misconduct**

Petitioner contends that the prosecution misstated the law in its closing argument, and that the misstatement amounted to misconduct.[6] In some instances, prosecutorial misconduct may so infect the trial with unfairness as to make the resulting conviction a denial of due process. Greer v. Miller, 482 U.S. 756, 765-66 (1987) (citations omitted). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Id.

///

///

---

[6] Respondent contends that Petitioner's prosecutorial misconduct argument is subject to procedural bar. The California Court of Appeal, however, did not clearly state that it was denying Petitioner's claim based on his failure to object to the prosecutor's statements at trial. Rather, the Court of Appeal appears to have reached the merits of Petitioner's claim and determined that any misconduct was harmless. (Pet., Ex. A at 61). Accordingly, the claim is not subject to procedural bar. See Harris v. Reed, 489 U.S. 255, 263 (1989) (procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar.")

The California Court of Appeal noted that, even assuming the prosecution misstated the law in its' closing argument, the misstatement was rendered harmless by the trial court's jury instructions. (Pet., Ex. A at 61). Petitioner concedes that the trial court instructed the jury on the issue of specific intent. (Pet., Ex. A at 50). The trial court further instructed the jury that "if anything concerning the law said by the attorneys in their arguments...conflicts with [the court's] instructions on the law, you must follow [the court's] instructions." (Lodged Doc. 16 at 591). A jury is presumed to follow its instructions. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

The Court agrees with the California Court of Appeal that, even assuming prosecutorial misconduct, Petitioner cannot establish any prejudice as a result of the misconduct because the trial court properly instructed the jury on the elements of the crime, and the jury is presumed to have followed the trial court's instructions. Accordingly, any misstatement of the law made by the prosecution did not so infect the trial with unfairness as to make the resulting conviction a denial of due process, and thus Petitioner is not entitled to relief.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 17, 2009**     /s/ **John M. Dixon**
UNITED STATES MAGISTRATE JUDGE